IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EMMANUEL AGBARA,                              *

     Plaintiff,                                *

v.                                           *          Case No. TJS-20-0306

PRINCE GEORGE'S COUNTY PUBLIC                *
SCHOOLS, *et al.*,
                                             *
     Defendants.
                                   *      *      *      *      *      *

**MEMORANDUM OPINION**

The following motions are pending before the Court: the motion for "Leave to File Re-
dacted Versions of a Complaint and Divorce Transcript Attachments" (ECF No. 4) filed by Plain-
tiff Emmanuel Agbara ("Mr. Agbara"); the "Motion to Dismiss Plaintiff's Redacted Complaint"
(ECF No. 9) filed by Defendants Board of Education of Prince George's County, *et al.*[1] (collec-
tively, the "Board Defendants"); the "Motion to Dismiss and Strike Plaintiff's Redacted Com-
plaint, and for Sanctions" (ECF No. 16) filed by Defendant Evelyn O. Okoji ("Ms. Okoji"); the
"Motion to Strike Plaintiff's Opposition to Motion to Dismiss, and for Sanctions" (ECF No. 18)
filed by Ms. Okoji; the "Motion to Strike Plaintiff's Response in Opposition as an Improper Sur-

---

[1] The Board Defendants are the Board of Education of Prince George's County (the
"Board"), Dr. Monica Goldson, Chief Executive Officer of Prince George's County Public Schools
("Dr. Goldson"), Kenmoor Early Childhood Development Center ("KECDC"), Ms. Alma Ezell-
Lawson, Principal of KECDC ("Principal Ezell-Lawson"), Ms. Ham (Trice), Registrar of KECDC,
and Ms. Lisa Lamar, Special Education Coordinator for KECDC ("Ms. Lamar"). Although Mr.
Agbara improperly named Prince George's County Public Schools as the lead defendant in the
Redacted Complaint, the Board notes that the proper defendant is the Board of Education of Prince
George's County. ECF No. 9-1 at 1 n.1. *See* Md. Code, Educ. § 3-104(a) and (b)(2) (providing that
the board of education for each county school system and the City of Baltimore is the entity which
is empowered to sue and be sued).

Reply" (ECF No. 29) filed by the Board Defendants; the "Motion to Strike Plaintiff's Surresponse" (ECF No. 30) filed by Ms. Okoji; and the "Motion for Leave to File a Surreply; and Motion in Opposition to Defendant Okoji's Motion to Strike Plaintiff's Surreply" (ECF No. 31) filed by Mr. Agbara.[2] Having considered the submissions of the parties (ECF Nos. 4, 9, 15, 16, 17, 18, 19, 20, 21, 22, 23, 29, 30, 31, and 32), I find that a hearing is unnecessary. *See* Loc. R. 105.6.

I.    **INTRODUCTION**

    A.    **Procedural Background**

    This case is about a dispute over the interpretation of a child custody order issued by a Maryland state court. Mr. Agbara claims that the Board Defendants conspired with Ms. Okoji, his ex-wife and the mother of his son, to interpret the child custody order in a way that barred him from picking his child up from school before 5:00 p.m. on Monday, January 6, 2020, and on an unspecified date in October 2019. In Mr. Agbara's shotgun-style, 56-page complaint (complete with unnumbered paragraphs and 500 pages of exhibits), he attempts to cobble together several claims under 42 U.S.C. § 1983 for the supposed violation of his constitutional rights under the Fourteenth Amendment. All of this for having been deprived of the ability to pick up his child from school approximately 90 minutes early on two occasions. The defendants have moved to dismiss Mr. Agbara's claims and the motions are now ripe for consideration. As explained below, the Court will dismiss all of Mr. Agbara's claims.

---

    [2] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to the undersigned to conduct all further proceedings in this case, including trial and entry of final judgment, and to conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals, if an appeal is filed. ECF No. 28.

### B.    Factual Background

Rather than filing a complaint with "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Mr. Agbara filed a sprawling history of his marriage to Ms. Okoji, the dissolution of that marriage, and a narrative of his frequent child-custody disputes with Ms. Okoji. Most of the allegations in the Redacted Complaint[3] are immaterial to Mr. Agbara's claims. Rather than summarize the entire complaint, the Court will direct its attention to the allegations that are material to Mr. Agbara's claims.

Mr. Agbara and Ms. Okoji were married in 2013. ECF No. 3 at 18. The marriage was not a happy one. *Id.* Mr. Agbara and Ms. Okoji have one child, a son, who was born in January 2015. Mr. Agbara and Ms. Okoji separated and then divorced. *Id.* at 25. The divorce was finalized on May 31, 2018. *Id.* at 25. Under the terms of the Judgment of Absolute Divorce ("Custody Order"), both parents were ordered to share physical and joint legal custody of their son, and Ms. Okoji was granted "primary, residential custody." ECF No. 1-5 at 1-2. The Custody Order directed Mr. Agbara and Ms. Okoji to confer about "all important matters" relating to their son, but it gave "final decision-making" authority for "all educational matters" to Ms. Okoji, and "final decision-making authority for all medical decisions" to Mr. Agbara. *Id.* at 2. The Custody Order directed Ms. Okoji to enroll the child in a licensed child care center and allowed Mr. Agbara the right to enroll the child in after-school programs once the child reached five years of age. *Id.* at 3. Mr. Agbara was permitted visitation with his son every other weekend (beginning on Fridays at 5:00 p.m. and lasting until Mondays at 9:00 a.m.) and weekday visitation with his child "every other

---

[3] Mr. Agbara's motion for leave to file the Redacted Complaint (ECF No. 4) is granted, subject to the Court's ruling on Ms. Okoji's motion to strike. Although the Court has not compared the Redacted Complaint (ECF No. 3) with the initial Complaint (ECF No. 1), it appears that the only change is the redaction of the personally identifiable information of the minor child.

Monday at 5:00 p.m. until Tuesday at 9:00 am." *Id.* at 2. The Custody Order did not state whether Mr. Agbara's right to enroll the child in after-school programs also granted him the ability to pick up his child from school before the normal 5:00 p.m. pickup time on his visitation days, or whether it granted Mr. Agbara the right to pick up his child from school on non-visitation days.

Mr. Agbara's child was enrolled at KECDC. Starting in February 2019, Mr. Agbara began to pick his child up from KECDC at 3:30 p.m. on his visitation days. This is an earlier time than allowed for in the Custody Order, but it was apparently permitted by KECDC. ECF No. 3 at 28. Mr. Agbara suggests that the staff at KECDC may have allowed him to pick up his son at 3:30 p.m. instead of 5:00 p.m. because they confused him "with a fellow who had been picking up the minor child from the school." *Id.* After the summer vacation in 2019, Mr. Agbara was no longer permitted to pick up his child from school before 5:00 p.m. *Id.* at 33. School employees explained to Mr. Agbara that their interpretation of the Custody Order (which provides that Mr. Agbara may pick up his child from school at 5:00 p.m. on visitation days) did not allow him to pick his child up from school before 5:00 p.m. *Id.* Mr. Agbara objected to what he viewed as an overly technical interpretation of the Custody Order and asked what had prompted the school to make this change. *Id.*

Principal Ezell-Lawson explained that "it was what Ms. Okoji wanted." *Id.* Because Ms. Okoji was the primary custodian of the child, and because she was the "parent and guardian of the minor child on file at the school," KECDC was "bound to follow her instruction." *Id.* Apparently, because Ms. Okoji was the person to register the child for the school, and because she did not choose to add Mr. Agbara as a contact in the school's "Blue Book" for the child, the school was obligated to comply with Ms. Okoji's decisions regarding the child, and her decisions alone. Ms. Lamar suggested that Mr. Agbara obtain a modified Custody Order that would allow him to add

himself to the school's "Blue Book" for his son. *Id.* at 34. Principal Ezell-Lawson suggested that Mr. Agbara attempt to convince Ms. Okoji to add his name to the emergency contact list and the school's other official registration forms so that he would have the ability to pick up his son from the school as he chose. *Id.*

At some point before January 2020, Mr. Agbara informed Principal Ezell-Lawson that he intended to enroll his child in after-school programs and that he would pick his son up from school "at the end of classes," which appears to be at 3:30 p.m. *Id.* at 35. Ms. Lamar and Principal Ezell-Lawson told Mr. Agbara that he could not do so because of Ms. Okoji's instructions. *Id.* at 35. They suggested that Mr. Agbara obtain a separate court order if he wished to pick up his child from school as he requested. *Id.* On January 2, 2020, Mr. Agbara emailed Principal Ezell-Lawson to remind her of his son's upcoming fifth birthday and to announce his continued intention to pick him up from school at the end of classes for an after-school program. *Id.*

On January 6, 2020, Mr. Agbara went to KECDC to pick up his son from school. *Id.* Principal Ezell-Lawson refused to release Mr. Agbara's son to him. *Id.* at 35-36. She explained that the Custody Order did not give Mr. Agbara access to his son at the time. *Id.* Later the same day, Principal Ezell-Lawson emailed Mr. Agbara to state that she "just heard back from the General Counsel for Prince George's County Public Schools and per our telephone conversation this afternoon at 2:30, I am responding to you via email." *Id.* at 36. Principal Ezell-Lawson conveyed that "[t]he Counsel is stating that the [Custody Order] does not grant you access to pick up from school. The paragraph you referenced grants you the right to enroll [the child] in afterschool programs." *Id.*

Mr. Agbara alleges that the defendants' refusal to allow him to pick up his child from school on the afternoon of January 6, 2020, and on some unspecified date in October 2019, violated

his rights to due process and equal protection, which are secured to him under the Fourteenth Amendment. Although it is unclear, Mr. Agbara may have also raised claims against the defendants under Maryland state law.

## II.     ANALYSIS

### A.     Subject Matter Jurisdiction

The Board Defendants and Ms. Okoji have both filed motions to dismiss the Redacted Complaint for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1). ECF Nos. 9 & 16. A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *Richardson v. Mayor & City Council of Baltimore*, No. RDB-13-1924, 2014 WL 60211, at *2 (D. Md. Jan. 7, 2014). Generally, "questions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.'" *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999) (quoting 2 James Wm. Moore, *et al.*, *Moore's Federal Practice* § 12.30[1] (3d ed. 1998)). The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court. *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). In a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647.

There are two ways to present a 12(b)(1) motion to dismiss. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "A defendant may either contend (1) that the complaint fails to allege facts upon which subject matter jurisdiction can be based; or (2) that the jurisdictional facts alleged in the complaint are untrue." *Id.* The court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."

*Richmond*, 945 F.2d at 768. When a defendant makes a facial challenge to subject matter jurisdiction, as the defendants do here, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams*, 697 F.2d at 1219. "In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

In the Redacted Complaint's statement of jurisdiction, Mr. Agbara alleges that this Court has subject matter jurisdiction under 42 U.S.C. § 1983 and "because the case touch[es] and concern[s] collusion in restrain[t] of Plaintiff's constitutional rights."[4] *Id.* at 8.

To the extent that Mr. Agbara seeks to "enforce state court orders in a divorce decree by the Circuit Court for Prince George's County, Maryland," ECF No. 3 at 7, his claims will be dismissed for lack of subject matter jurisdiction. *See Ex parte Burrus*, 136 U.S. 586, 593-94 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States."); *see also Ojo v. Lynch*, 813 F.3d 533, 540 (4th Cir. 2016) (explaining that "it has long been a hallmark of our federalism principles that full authority over domestic-relations matters resides not in the national government, but in the several States").

Under Maryland law, Maryland state courts have jurisdiction to make initial child custody determinations if Maryland is the child's home state, if another state does not have jurisdiction, or if all other statues have declines jurisdiction because Maryland is the more appropriate forum. Md. Code, Family Law § 9.5-201(a). Once a Maryland state court has made an initial child custody

---

[4] Mr. Agbara has not alleged that this case involves diversity of citizenship. *See* 28 U.S.C. § 1332.

determination, it has "exclusive, continuing jurisdiction over the determination" until the child and its parents' or guardians' contacts with Maryland are severed, or the child and its parents or guardians no longer reside in Maryland. Md. Code, Family Law § 9.5-202. The parties do not dispute the jurisdiction of the Circuit Court for Prince George's County, Maryland over the child custody determination of Mr. Agbara and Ms. Okoji's child.

This Court does not have subject matter jurisdiction to "enforce state court orders in a divorce decree by the Circuit Court for Prince George's County, Maryland," as Mr. Agbara seeks to do in the Redacted Complaint.[5] *Washington v. Deline*, No. ELH-15-853, 2015 WL 1522748, at *2 (D. Md. Apr. 1, 2015) ("Under the domestic relations exception to federal jurisdiction, federal courts generally abstain from review of domestic cases.") (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 701-05 (1992)). Accordingly, because the Court does not have subject matter jurisdiction over the Redacted Complaint, at least to the extent that it seeks to "enforce state court orders in a divorce decree by the Circuit Court for Prince George's County, Maryland," the Redacted Complaint will be dismissed without prejudice. *See generally* 2 *Moore's Federal Practice* § 12.51 (2020) (explaining a dismissal for lack of jurisdiction under Rule 12 "is typically without prejudice and does not have a preclusive effect").

Even if the Court possessed subject matter jurisdiction to "enforce state court orders in a divorce decree by the Circuit Court for Prince George's County, Maryland," ECF No. 3 at 7, it would nonetheless be inappropriate for the Court to exercise jurisdiction in this case. *Fry v. Wimbish*, No. DKC-14-3875, 2014 WL 11460468, at *1 (D. Md. Dec. 22, 2014) ("Federal courts generally abstain from hearing matters involving domestic relations, i.e., divorce, child custody, alimony, and child support.") (citing *Cole v. Cole*, 633 F.2d 1083, 1087 (4th Cir. 1980)); *see also*

---

[5] In his opposition briefs, Mr. Agbara disputes that this is his intention.

*Cantor v. Cohen*, 442 F.3d 196, 202 (4th Cir. 2006) (same). "Commonly referred to as the domestic relations abstention doctrine, this principle is based on the notion that such matters are better handled by the states, which have the experience to deal with this specific area of the law." *Fry*, 2014 WL 11460468, at *1; *Washington*, 2015 WL 1522748, at *2-3. The defendants' motions to dismiss will also be granted on this alternative basis, at least to the extent that the Redacted Complaint seeks to enforce the child custody orders of a Maryland state court.

For these reasons, the defendants' motions to dismiss (ECF Nos. 9 & 16) for lack of subject matter jurisdiction under Rule 12(b)(1) are granted.

### B.    Failure to State a Claim Upon Which Relief Can Be Granted

The Board Defendants and Ms. Okoji have filed motions to dismiss the Redacted Complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) permits a court to dismiss a complaint if it fails to "state a claim upon which relief can be granted." "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, [and not to] resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (internal quotation marks omitted). A complaint must consist of "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). When considering a motion to dismiss, a court must accept as true the well-pled allegations of the complaint and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

Construing the Redacted Complaint liberally, Mr. Agbara raises substantive and procedural due process claims and an equal protection claim under 42 U.S.C. § 1983 against the Board Defendants, and a § 1983 conspiracy claim against Ms. Okoji. Under § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Section 1983 does not create "substantive rights;" rather, it provides "a method for vindicating federal rights elsewhere conferred." *B.G. v. Malhotra*, No. RDB-15-2663, 2016 WL 3384941, at *4 (D. Md. June 20, 2016) (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

The Fourteenth Amendment protects against the deprivation, without proper pre-deprivation proceedings, of "life, liberty, or property." U.S. Const. amend. XIV, § 1. To state a substantive or procedural due process claim, a plaintiff must establish that he has been deprived of a liberty or property interest. "Parents have a constitutionally protected liberty interest in the "care, custody, and control of their children." *Johnson v. Allen*, 416 F. Supp. 3d 550, 560 (E.D.N.C. 2018) (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). Although this liberty interest is not absolute, "parents have both a procedural and substantive right to due process when the state deprives them of or interferes with this liberty interest." *Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2012).

To state a violation of substantive due process, a plaintiff must allege (1) that he had a protected liberty interest; (2) that the state deprived him of; and "(3) that the state's action falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the

deficiency." *Quinn v. Board of County Commissioners for Queen Anne's County, Md.*, 862 F.3d 433, 443 (4th Cir. 2017) (emphasis in original) (quoting *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 827 (4th Cir. 1995)). "The touchstone of due process is protection of the individual against arbitrary action of government." *Slaughter v. Mayor & City Council of Baltimore*, 682 F.3d 317, 321 (4th Cir. 2012) (internal quotation marks and citation omitted). "Arbitrary action, however, is used in a constitutional sense, which encompasses only the most egregious official conduct, namely that which shocks the conscience." *Id.* (internal quotation marks omitted); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998) (explaining that "only the most egregious executive action," such as "conduct deliberately intended to injure in some way unjustifiable by any government interest," would violate substantive due process). "[T]he threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 847 n.8. "Defining conduct that shocks the conscience does not draw on any traditional standard of liability from tort law but rather refers, as a constitutional construct of substantive due process, to conduct intended to injure in some way unjustifiable by any government interest." *Slaughter*, 682 F.3d at 321 (internal quotation marks omitted).

Procedural due process, as compared with substantive due process, "ensures a fair process before the government may deprive a person of life, liberty, or property, but does not require certain results." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013) (internal citations omitted). To meet the requirements of procedural due process, a state actor must afford notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Batten v. Gomez*, 324 F.3d 288, 295 (4th Cir. 2003) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)). The Court evaluates procedural due process claims under the balancing standard articulated in *Mathews*

*v. Eldridge*, 424 U.S. 319, 332 (1976). *See D.B. v. Cardall*, 826 F.3d 721, 742 (4th Cir. 2016). "[Due] process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong*, 380 U.S. at 552).

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. The equal protection requirement "keeps governmental decisionmakers from treating differently persons who are in all relevant aspects alike." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citing *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). To state a claim for violation of the Equal Protection Clause, "a plaintiff must plausibly allege first that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Fauconier v. Clarke*, 966 F.3d 265, 277 (4th Cir. 2020) (internal quotation marks omitted). "But that showing does not secure the claim, as the plaintiff must also plausibly allege that the disparity was not justified under the appropriate level of scrutiny." *Id.*

### 1.    The Board

Section 1983 establishes a cause of action against any "person" who deprives another of federal rights under color of state law. 42 U.S.C. § 1983; *Brown v. Prince George's Cty. Bd. of Educ.*, No. GJH-18-2723, 2019 WL 3944983, at *3 (D. Md. Aug. 20, 2019) (citing *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999)). "Courts in this District have repeatedly and consistently explained that Maryland county boards of education do not qualify as 'persons' within the meaning of the statute and therefore cannot be sued under § 1983."

*Brown*, 2019 WL 3944983, at \*3 (collecting cases). Because the Board does not qualify as a "person" under § 1983, Mr. Agbara's § 1983 claims against the Board are not viable and will be dismissed with prejudice pursuant to Rule 12(b)(6).[6]

### 2. KECDC

The Board Defendants argue that the claims against Defendant KECDC must be dismissed because it is not a legal entity subject to suit. ECF No. 9-1 at 14. "The Federal Rules of Civil Procedure provide that the law of the state in which the district court sits determines an entity's capacity to be sued." *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 393 (4th Cir. 2014) (citing Fed. R. Civ. P. 17(b)). "Maryland's highest court made clear that, absent a statutory or constitutional provision creating a government agency, an 'office' or 'department' bears no unique legal identity, and thus, it cannot be sued under Maryland law." *Id.*

The Board Defendants state that KECDC is "merely a building owned and operated by the Board . . . to deliver educational services." ECF No. 9 at 1 n.2. Mr. Agbara has not cited any statutory or constitutional provision establishing KECDC as a government agency capable of being sued under Maryland law. Accordingly, all claims against KECDC will be dismissed with prejudice under Rule 12(b)(6).

### 3. Individual Board Defendants

The Board Defendants argue that any claims against the individual Board Defendants[7] must be dismissed pursuant to Rule 12(b)(6) regardless of whether they are official capacity or personal capacity claims. ECF No. 9-1 at 15. In *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985), the

---

[6] All claims against "Prince George's County Public Schools" are dismissed with prejudice. The Board is the proper defendant for any claims against Prince George's County Public Schools. *See* Md. Code, Educ. § 3-104(a) and (b)(2).

[7] The individual Board Defendants are all of the defendants named in the Redacted Complaint other than the Board, KECDC, and Ms. Okoji.

Supreme Court distinguished between individual, or personal, capacity suits and official capacity suits: "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Graham* 473 U.S. at 165; *see also Bosse v. Baltimore Cty.*, 692 F. Supp. 2d 574, 582 (D. Md. 2010). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Graham*, 473 U.S. at 165 (internal quotation marks and citation omitted); *see also Sadowski v. U.S. Postal Serv.*, 643 F.Supp.2d 749, 752 n.2 (D. Md. 2009) ("[O]fficial capacity claims against public employees are the same as suits against the public agency itself.").

To the extent that Mr. Agbara has raised official capacity claims against the individual Board Defendants, these claims are, in substance, claims against the Board.[8] Because the Board is not subject to suit under § 1983, any such claims will be dismissed with prejudice pursuant to Rule 12(b)(6). *See Stone v. Town of Cheverly, Maryland*, No. GJH-16-2592, 2017 WL 3887857, at *7 (D. Md. Sept. 5, 2017) (citing *Kirby v. City Of Elizabeth City, N. Carolina*, 388 F.3d 440, 452 n.10 (4th Cir. 2004) ("Official capacity suits generally represent but another way of pleading an action against the entity of which the officer is an agent. . . .") (citation omitted)).

To the extent that Mr. Agbara has raised personal capacity claims against the individual Board Defendants, those claims must also be dismissed.[9] Mr. Agbara's claims concern the alleged

---

[8] The individual Board Defendants are also immune from liability in their official capacities under state and federal law. *See* Md. Code, Educ. § 4-106; Md. Code, Cts. & Jud. Proc. § 5-518; and 20 U.S.C. § 6731, *et seq.*

[9] It is not clear whether Mr. Agbara intended to raise personal capacity claims against the individual Board Defendants. Because of the Fourth Circuit's relatively lenient pleading requirements on this issue, the Court will assume that he did raise such claims. *See Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir. 1995) (holding "that a plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983")

"denial of access to, and custody of a minor child at a public school to Plaintiff, a birth father, parent and legal guardian in obstruction of Plaintiff's liberty interest in his minor child." ECF No. 3 at 4. Specifically, on January 6, 2020 and on some unspecified date in October 2019, Mr. Agbara was denied "access to his minor child at the end of school" based on the individual Board Defendants' interpretation of the Custody Order. *Id.* at 5.

The Custody Order contains three provisions that are relevant to Mr. Agbara's § 1983 claims. First, it states that Mr. Agbara and Ms. Okoji "shall share physical custody of the minor child," with Ms. Okoji being granted "primary, residential custody" and "final decision-making [authority] for all educational matters." ECF No. 1-5 at 1-2. Second, it provides that Mr. Agbara is permitted visitation with his son on every other Monday beginning at 5:00 p.m. until Tuesday at 9:00 a.m., and on every other weekend beginning at 5:00 p.m. on Friday until 9:00 a.m. on Monday. *Id.* at 2. Third, it states that "once the child is five (5) years old, [Mr. Agbara] shall have the right to enroll the minor child in after-school programs and in cultural and traditional organizations" that are relevant to strengthening "ties with Nigerian and American communities in the United States." *Id.* at 3.

On Monday, January 6, 2020, Mr. Agbara attempted to pick up his son from KECDC. ECF No. 3 at 35. Principal Ezell-Lawson did not allow him to do so. *Id.* According to the Redacted Complaint, Principal Ezell-Lawson stated that KECDC "was not an after-school program and that the order in the Judgment of Absolute Divorce . . . did not give Plaintiff access to, and custody of the minor child at the school." *Id.* at 36. In addition, Principal Ezell-Lawson sent an email to Mr. Agbara explaining that according to the General Counsel for Prince George's County Public Schools, "the court order does not grant you access to pick up from school. The paragraph you referenced grants you the right to enroll [the child] in afterschool programs." *Id.*

15

Mr. Agbara disagrees with the way that Principal Ezell-Lawson and the General Counsel for Prince George's County Public Schools interpreted the Custody Order. *Id.* at 6 ("The denial of access to, and custody of the minor child on January 6, 2020 without due process of law, which were inherent in the right to enroll the minor child in after-school programs and in cultural and traditional organizations as stated in the Judgment of Absolute divorce, effectively nullified a valid court order. . . ."). According to Mr. Agbara's interpretation, as soon as his child reached his fifth birthday, Mr. Agbara was entitled to pick him up from school at 3:30 p.m. on any given day to take him to an after-school program.[10] Accepting the well-pled factual allegations of the Redacted Complaint as true, the individual Board Defendants interpreted the Custody Order to mean that Mr. Agbara was only permitted to pick the child up from school beginning at 5:00 p.m. on his visitation days. The individual Board Defendants interpreted the Custody Order to mean that Mr. Agbara was not permitted to pick up his child from school on January 6, 2020, because of instructions they had received from Ms. Okoji. ECF No. 3 at 7.

Even assuming that the individual Board Defendants' interpretation of the Custody Order was erroneous, such a misinterpretation cannot serve as the basis for any claim for the violation of Mr. Agbara's substantive due process rights. *See Schmidt v. Des Moines Public Schools*, 655 F.3d 811, 819 (8th Cir. 2011) (explaining that the "doctrine of substantive due process is reserved for truly extraordinary and egregious cases; it does not forbid reasonable, though possibly erroneous, legal interpretation") (internal quotation marks omitted). This is not an extraordinary or egregious case. At most, Mr. Agbara was deprived of access to his child for approximately 90 minutes on two occasions (January 6, 2020, and an unspecified date in October 2019). This *de minimis*

---

[10] The Redacted Complaint implies that the school day at KECDC ends at 3:30 p.m. *See* ECF No. 3 at 6, 28, and 54.

16

deprivation was the result of the individual Board Defendants' reasonable interpretation of the Custody Order, which stated that Mr. Agbara was only permitted to pick his child up from school beginning at 5:00 p.m. on his visitation days. To the extent that there was some ambiguity in the Custody Order arising from the provision that allowed Mr. Agbara to enroll his child in after-school programs, the individual Board Defendants' interpretation of the Custody Order was not so unreasonable to give rise to a claim for the violation of Mr. Agbara's substantive due process rights. *See id.* Accordingly, Mr. Agbara has failed to state a claim upon which relief can be granted under § 1983 for a substantive due process violation.[11] To the extent that he has raised such a claim against the individual Board Defendants, it is dismissed with prejudice under Rule 12(b)(6).

Mr. Agbara's procedural due process claims against the individual Board Defendants must also be dismissed. Mr. Agbara does not state what was deficient with the process the individual Board Defendants employed in this case. Liberally construing the Redacted Complaint, Mr. Agbara alleges that the individual Board Defendants violated his procedural due process rights by consulting with their attorney and interpreting the Custody Order to mean that he could not pick up his child from school as he requested. The individual Board Defendants explained their reasoning to Mr. Agbara. Even assuming that Mr. Agbara has alleged an infringement on a protected liberty interest, the nature of the infringement was limited. At worst, Mr. Agbara was deprived of

---

[11] Although the Court is not required to reach the issue here, other courts have found that in some instances a temporary loss of custody or visitation rights "might be so tiny that it simply does not amount to a deprivation of liberty." *Terry v. Richardson*, 346 F.3d 781, 786 (7th Cir. 2003); *see also Brittain v. Hansen*, 451 F.3d 982, 992 (9th Cir. 2006) ("Regardless whether visitation rights collectively may be a 'fundamental' liberty interest to the parent involved, we do not believe a single *instance* of visitation, of a single week in duration, is a 'fundamental' right. As such, substantive due process does not provide a remedy in this case."); *Zakrzewski v. Fox*, 87 F.3d 1011, 1014 (8th Cir. 1996) ("Even assuming the officials deviated from proper procedure, the one-time interruption of Zakrzewski's right to visitation in this case does not amount to a deprivation of liberty."); *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981) ("Any deprivation of Wise's visitation rights was so insubstantial in duration and effect to rise to a federal constitutional level.")

taking his child to unspecified after-school programs on two occasions. Given the limited nature

of any infringement on Mr. Agbara's protected liberty interest, the procedures employed by the

individual Board Defendants (reviewing the language of the Custody Order, consulting with legal

counsel, and explaining the decision to Mr. Agbara) were sufficient to protect Mr. Agbara's right

to procedural due process.[12] Any claims that Mr. Agbara has raised against the individual Board

Defendants under § 1983 for procedural due process violations are dismissed with prejudice under

Rule 12(b)(6).

Mr. Agbara's Redacted Complaint contains few references to his equal protection claim.

*See* ECF No. 3 at 2, 8, 15, 37, 40, 43, 46, 50. These references are conclusory and unsupported by

plausible factual allegations. As such, Mr. Agbara has failed to state claim for an equal protection

violation. Mr. Agbara attempts to flesh out his equal protection claim in his opposition to the Board

Defendants' motion to dismiss (ECF No. 17 at 24-25.) However, "it is axiomatic that the complaint

may not be amended by the briefs in opposition to a motion to dismiss." *Royster v. Gahler*, 154 F.

Supp. 3d 206, 236 (D. Md. 2015) (internal quotation marks omitted).

If Mr. Agbara had sought to amend his complaint to include the additional allegations that

are in his opposition brief (ECF No. 17 at 24-25), such amendment would have been futile. Even

with these additional allegations, Mr. Agbara would have still failed to state a plausible equal

protection claim. First, it may be that certain "divorced and noncustodial parents continued to have

access and custody of their children" at KECDC, but the reason that Mr. Agbara was denied access

to his child on the days in question is because such access was prohibited under the individual

---

[12] Importantly, to the extent that Mr. Agbara disagrees with the individual Board Defendants' interpretation of the Custody Order, he is not without recourse. There is nothing to prohibit him from seeking a modification of the Custody Order or a separate order from the state court with jurisdiction over the custody matter.

Board Defendants' interpretation of the Custody Order. Mr. Agbara does not plausibly allege that the reason he was treated differently was because of intentional or purposeful discrimination (let alone that the discrimination was "on the bases of gender, nationality and residency," as he claims). Second, although Mr. Agbara may view it as unfair that others designated by Ms. Okoji were permitted to pick up his child (while he was not), this is also in line with the Board Defendants' interpretation of the Custody Order. He does not plausibly allege that he was treated differently because of intentional or purposeful discrimination. The same goes for Mr. Agbara's complaints about his name being excluded from the "Blue Book," Ms. Lamar's advice to Mr. Agbara to "seek guardianship of his minor child or a court order" to have full access to his child's school record, and the denial of Mr. Agbara's request for access to the child's emergency contact list. ECF No. 17 at 25. Mr. Agbara's allegations are not sufficient to state a plausible equal protection claim. For this reason, his equal protection claim will be dismissed with prejudice pursuant to Rule 12(b)(6).[13]

### 4.   Ms. Okoji

Ms. Okoji moves to dismiss the Redacted Complaint because it does not state a valid claim against her. ECF No. 15 at 5-7. She argues that Mr. Agbara's allegations against her "amount to claims that Ms. Okoji took a vacation, shortened the length of the winter holiday during which the minor child was to be in Plaintiff's custody, and called the police several times to look into the minor child's welfare and to assist in the transfer of the minor child between parents." *Id.* at 5. Ms. Okoji argues that the allegations against her in the Redacted Complaint "have no connection to the

---

[13] Alternatively, the Court will dismiss with prejudice the claims that Mr. Agbara has raised against Dr. Goldson. Mr. Agbara does not allege that Dr. Goldson was personally involved in the decisions to bar him from removing his child from KECDC on the dates in question, nor does he allege that she had any knowledge of the matter. "It is well established that the doctrine of respondeat superior does not apply in § 1983 claims." *Green v. Carafano*, No. DKC-12-1039, 2012 WL 3263763, at *2 (D. Md. Aug. 8, 2012) (citing *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004)).

Redacted Complaint's central claim that, acting in concert with the County Defendants, Ms. Okoji somehow infringed upon Plaintiff's constitutional liberty issues." *Id.*

"To establish a conspiracy claim under § 1983, a plaintiff 'must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the] deprivation of a constitutional right.'" *Penley v. McDowell Cty. Bd. of Educ.*, 876 F.3d 646, 658 (4th Cir. 2017) (quoting *Massey v. Ojaniit*, 759 F.3d 343, 357-58 (4th Cir. 2014)). To meet this "weighty" burden, a plaintiff "must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." *Id.* The evidence "must, at least, reasonably lead to the inference that [the defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Id.*

Liberally construing Mr. Agbara's complaint and assuming that he intended to assert a § 1983 conspiracy claim against Ms. Okoji for the deprivation of his due process and equal protection rights, the claim must be dismissed under Rule 12(b)(6). To state a valid claim for § 1983 conspiracy, Mr. Agbara must first plausibly allege that he was deprived of his constitutional rights to due process and equal protection of the laws. Because the Redacted Complaint does not state viable due process or equal protection claims, his claim against Ms. Okoji for § 1983 conspiracy must also fail. *Massey*, 759 F.3d at 358  ("Because Massey has not stated a claim for deprivation of a constitutional right, his Count III conspiracy claim was properly dismissed as to Officers Ojaniit and Esposito."); *Glassman v. Arlington Cty., VA*, 628 F.3d 140, 150 (4th Cir. 2010) ("Because we hold that the defendants' actions in this case did not result in the "deprivation of a constitutional right," we conclude that Glassman's civil conspiracy claim was properly dismissed.")

Even assuming that Mr. Agbara was deprived of his constitutional rights by the actions of the defendants, which he was not, the Redacted Complaint still fails to state a valid claim against Ms. Okoji because it contains no plausible allegations that Ms. Okoji and the other defendants engaged in a conspiracy with the same objective. At most, Mr. Agbara's allegations amount to his suspicion that because Ms. Okoji enrolled their child in Prince George's County's Schools, and because she provided the defendants with information about her child and the Custody Order, this must amount to a conspiracy. It does not. There are no plausible allegations that the defendants agreed to conspire against Mr. Agbara for any reason, let alone to deprive him of a constitutional right. For these reasons, Mr. Agbara's claim against Ms. Okoji for § 1983 conspiracy is dismissed with prejudice pursuant to Rule 12(b)(6).

### C.      Ms. Okoji's Motion to Strike the Redacted Complaint

Ms. Okoji moves to strike "immaterial and scandalous" allegations in the Redacted Complaint pursuant to Fed. R. Civ. P. 12(f). ECF No. 15 at 7. Ms. Okoji characterizes these allegations as broadcasting "intimate details of Ms. Okoji's health and unfounded innuendo about her personal conduct." *Id.* She notes that the allegations are immaterial to the Court's determination of whether Mr. Agbara was deprived of his constitutional rights on two occasions by the defendants' interpretation of the state custody order. *Id.* at 7-8. She requests that "[t]hese allegations . . . be purged from the court's files and the public records to protect Ms. Okoji from further disparagement." *Id.* at 8.

A motion to strike under Rule 12(f) is an appropriate remedy for the elimination of "redundant, immaterial, impertinent, or scandalous matter" in any pleading. Fed. R. Civ. P. 12(f); 5C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1380 (3d ed. Oct. 2020 Update). "Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading

is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (internal citation omitted). Rule 12(f) motions are generally not granted "unless the challenged allegations have no possible or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to a party." *Gilman & Bedigian, LLC v. Sackett*, No. CCB-19-3471, 2020 WL 5338995, at *3 (D. Md. Sept. 4, 2020) (citing Wright & Miller, *Fed. Prac. & Proc.* § 1382; *Schultz v. Braga*, 290 F. Supp. 2d 637, 654–55 (D. Md. 2003) (striking "inflammatory" allegations about prior shooting by FBI agent because their relevance had not yet been determined and they were prejudicial to the agent's reputation)).

The Court will grant Ms. Okoji's motion to strike. The Redacted Complaint contains a number of allegations regarding intimate details of Ms. Okoji's personal, social, and medical history that have no bearing on Mr. Agbara's claims in this case. These allegations are inflammatory and scandalous. It appears that Mr. Agbara included the allegations in the Redacted Complaint to harass and embarrass Ms. Okoji. The allegations do not advance or diminish his claims; they are not relevant at all. Although motions to strike under Rule 12(f) are generally viewed with disfavor, this is the rare case where it is warranted for the Court to exercise its broad discretion to strike allegations from the Redacted Complaint. *See generally* Wright & Miller, *Fed. Prac. & Proc.* § 1382 ("[T]he disfavored character of Rule 12(f) is relaxed somewhat in the context of scandalous allegations and matter of this type often will be stricken from the pleadings in order to purge the court's files and protect the person who is the subject of the allegations."). Because Ms. Okoji has not indicated with specificity what parts of the Redacted Complaint should be stricken, the Court has reviewed the Redacted Complaint and redacted all scandalous allegations that are immaterial to Mr. Agbara's claims. The Court has not redacted all of the immaterial allegations (there are so

many that it would take substantial time to do so) because their presence in the Redacted Complaint cannot be said to injure or disparage Ms. Okoji.

The Clerk of Court will be directed to file a copy of the Redacted Complaint with the Court's modifications as a separate document on the docket. The Clerk will also be directed to restrict access to the Redacted Complaint filed at ECF No. 3 (along with its attachments) so that it is only accessible to the parties in this case and to Court staff.

###     D.     Ms. Okoji's Motions to Strike Mr. Agbara's Opposition Briefs

Ms. Okoji moves to strike Mr. Agbara's opposition briefs (ECF Nos. 17 & 19) and an affidavit (ECF No. 20) pursuant to Fed. R. Civ. P. 12(f). ECF Nos. 18 & 22. By its plain language, Rule 12(f) only applies to pleadings, which are defined in Rule 7(a) as "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 12(f). Mr. Agbara's opposition briefs (ECF Nos. 17 & 19) and the affidavit (ECF No. 20) are not pleadings. Accordingly, the Court cannot strike any of the scandalous matter contained in those filings under Rule 12(f). *See, e.g.*, *Moore v. LaSalle Corr., Inc.*, No. 3:16-CV-01007, 2020 WL 6389184, at *2 n.1 (W.D. La. Oct. 30, 2020) (collecting cases where courts have found that Rule 12(f) does not apply to materials besides pleadings); *Bracey v. Horry Cty. Council*, No. 4:17-399-RBH-TER, 2017 WL 5256895, at *2 (D.S.C. Nov. 13, 2017) ("Rule 12(f) motions apply to pleadings only and are not available to strike material contained in motions."); *Judson v. Midland Credit Mgmt., Inc.*, No. 13-11435-TSH, 2014 WL 4965944, at *3 (D. Mass. Oct. 1, 2014) (explaining that "memoranda and motions are not considered pleadings within the meaning of [Fed. R. Civ. P. 7(a)]" and collecting cases where courts have "refused to strike motions under Fed. R. Civ. P. 12(f)"); *Hardin v. Belmont Textile Mach.*

*Co.*, No. 3:05-CV-492-M, 2010 WL 2293406, at *3 (W.D.N.C. June 7, 2010) ("Plaintiff's motion to strike is denied because it seeks to strike a filing other than a pleading."). Ms. Okoji's motions to strike Mr. Agbara's opposition briefs (ECF Nos. 18 & 22) are denied.

  **E.**  **Ms. Okoji's Requests for Sanctions**

  Ms. Okoji moves for the imposition of sanctions against Mr. Agbara pursuant to Fed. R. Civ. P. 11. ECF Nos. 16 & 18. Under Rule 11, the Court maintains the authority to sanction litigants if they file pleadings for an "improper purpose, such as harassment, delay or coercion." *See* Fed. R. Civ. P. 11; *see also Owen-Williams v. Kwarciany*, No. PX-17-1112, 2018 WL 1316228, at *5 (D. Md. Mar. 13, 2018). Rule 11 expressly applies to pro se litigants, but the court may exercise "sufficient discretion to take account of the special circumstances that often arise in pro se situations." *Id.* (quoting Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment (citing *Haines v. Kerner*, 404 U.S. 519 (1972))).

  Rule 11 contains a number of procedural requirements that Ms. Okoji did not satisfy in this case. First, a motion for sanctions under Rule 11 "must be made separately from any other motion." Fed. R. Civ. P. 11(c)(2). Second, a motion for sanctions must be served on the party against whom sanctions are sought more than 21 days before the motion is filed with the Court. *Id.*; *see also Owen-Williams*, No. PX-17-1112, 2018 WL 1316228, at *5 (D. Md. Mar. 13, 2018); 2 Moore's Federal Practice - Civil § 11.22 (2020). Ms. Okoji did not comply with these requirements. Her motions for sanctions were included in her motion to dismiss (ECF No. 16) and in her motion to strike Mr. Agbara's opposition to the Board Defendants' motion to dismiss (ECF No. 18). There is no indication they were served on Mr. Agbara before being filed in this Court. For these reasons alone, the Court declines to consider imposing sanctions against Mr. Agbara pursuant to Rule 11.

The Court makes no finding as to whether Mr. Agbara's conduct would warrant sanctions had Ms. Okoji complied with Rule 11's procedural requirements.

### F.    State Law Claims

To the extent that Mr. Agbara has raised any claims against the defendants under state law, those claims are dismissed without prejudice. The Court has dismissed all of Mr. Agbara's federal claims against the defendants with prejudice.[14] Where, as here, "the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966)). Because Plaintiff's federal claims have been dismissed at an early stage of litigation, the Court declines to exercise its supplemental jurisdiction over any state claims that Mr. Agbara may have included in his Redacted Complaint. The interests of judicial economy, convenience, fairness, and comity favor these claims being resolved in state court. *See generally Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 499 (D. Md. 2005) (declining to exercise supplemental jurisdiction over state law claims and dismissing them without prejudice).

### G.    The Defendants' Motions to Strike Improper Surreply

The defendants' motions (ECF Nos. 29 & 30) to strike Mr. Agbara's "Response in Opposition to Memorandum in Further Support of Motion to Dismiss, to Strike, and for Sanctions by Defendant Evelyn Okoji" (ECF No. 23) are granted. Under Local Rule 105.2(a) "Unless otherwise

---

[14] Because the Court has ruled on the merits of the defendants' motions under Fed. R. Civ. P. 12(b)(1) and (b)(6), the Court declines to consider whether the case should be dismissed for insufficient service of process. *See* ECF No. 9-1 at 6-8.

ordered by the Court, surreply memoranda are not permitted to be filed." A surreply may be permitted "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003) (citation omitted), *aff'd*, 85 F. App'x. 960 (4th Cir. 2004); *see also Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 512 n.8 (D. Md. 2009).

There is no issue in Ms. Okoji's reply brief (ECF No. 22) that Mr. Agbara was unable to contest in his opposition brief. To the extent that the reply brief contained additional requests to strike under Rule 12(f) and for sanctions under Rule 11, a surreply is not necessary because those requests have been denied. The defendants' motions (ECF Nos. 29 & 30) to strike Mr. Agbara's surreply (ECF No. 23) are granted. Mr. Agbara's motion for leave to file a surreply (ECF No. 31) is denied. The Court will strike Mr. Agbara's surreply (ECF No. 23) from the record for violation of Local Rule 105.2.

## III.    CONCLUSION

For the reasons set forth above, the defendants' motions to dismiss (ECF Nos. 9 & 16) are granted. Mr. Agbara's claims to enforce the Custody Order are dismissed without prejudice for lack of subject matter jurisdiction, and his § 1983 claims are dismissed with prejudice for failure to state a claim upon which relief can be granted. To the extent that Mr. Agbara has raised other state claims, those claims are dismissed without prejudice. Ms. Okoji's motion to strike allegations from the Redacted Complaint (ECF No.  16 at 2) is granted. Ms. Okoji's motions for sanctions (ECF No. 16 at 2 and 18 at 1) are denied. Ms. Okoji's motions to strike Mr. Agbara's opposition briefs (ECF Nos. 17 & 19) are denied. The defendants' motions to strike Mr. Agbara's improper surreply (ECF Nos. 29 & 30) are granted.

The Clerk of Court shall mail a copy of this Memorandum and its accompanying Order to Mr. Agbara at the address on file with the Court. This case will then be closed.


December 18, 2020                              _____/s/_____
Date                                          Timothy J. Sullivan
                                              United States Magistrate Judge